# FOR PUBLICATION

FILED & ENTERED

MAR 05 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fisherl    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>James Alan Ritter<br>Debra Michelle Ritter<br><br><br><br>Debtor(s). | Case No.: 1:19-bk-11838-MT<br><br>CHAPTER 13<br><br>**MEMORANDUM OF DECISION DENYING DEBTORS' MOTION UNDER 11 U.S.C. § 1328(i) FOR AN ORDER GRANTING AN IMMEDIATE DISCHARGE OF DISCHARGEABLE DEBTS**<br><br>Date:    February 23, 2021<br>Time:    11:00 a.m.<br>Courtroom:    302 (via ZoomGov) |

    This case tests the application of the new Chapter 13 discharge provision passed on December 27, 2020 as part of coronavirus emergency response legislation, raising the question of whether a "COVID-19 Discharge" differs substantially from the usual hardship discharge.

    On July 21, 2019, James Alan Ritter and Debra Michelle Ritter (the "Debtors") filed a petition under Chapter 13. The Court takes judicial notice of the court records, pleadings, and documents filed in this case under Fed. R. Evid. 201. Debtors' Schedules I and J reflected a gross income of $138,600 and a surplus income of $535.00 on the date of the petition. ECF doc. 11.

The Order Confirming Debtors' First Amended Chapter 13 plan (the "Amended Plan") was entered on October 18, 2019. (ECF doc. 22.) In the Amended Plan, Debtors provided for 63% to unsecured creditors through a regular step-up in payments: $856.42 for months 1 and 2; $1,080 for months 3 through 15; $1,620 for months 16 through 27; and $1,870 for months 28 through 60.  There were no liquidation issues at the time of confirmation. The applicable commitment period is 60 months totaling $96,902.84 (the plan base amount), plus tax refunds. The Amended Plan also provided for the curing of defaults and maintenance of payments on residential mortgages owed to Fay Servicing, LLC and Bank of America.  On October 26, 2019, a Transfer of Claim was filed showing that Bank of America transferred the claim to Specialized Loan Servicing, LLC.  ECF doc. 32.

On June 22, 2020, Specialized Loan Servicing, LLC, filed a "Notice of Temporary Forbearance" stating that Debtors' loan was in forbearance status for 3 months effective April 1, 2020. The Notice of Temporary Forbearance recognized the "recent financial hardship resulting directly or indirectly from the COVID-19 pandemic," and provided "a temporary suspension of mortgage payments… consistent with the COVID-19 relief available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act." ECF doc. 38.

On September 9, 2020, the Chapter 13 Trustee filed a "Stipulation to Suspend Plan Payments Pursuant to 11 U.S.C. §1329 and L.B.R. 3015-1(x)(3)" (the "COVID Stipulation"), ECF doc. 40, recognizing that debtors have  "experienced a decrease in income related to the COVID-19 pandemic" and that "the reduction in income merits the suspension of 3 plan payments." An order approving the COVID Stipulation with the Trustee was entered on September 14, 2020. ECF doc. 41.

Following the suspension of plan payments, on January 27, 2021, the Court then entered an order approving a Motion to Enter into a Loan Modification, filed by Metropolitan Life Insurance Company by and through its Servicer Fay Servicing, LLC. ECF doc. 73.

Debtors have not completed payments under the confirmed plan.  There are 45 payments remaining in the plan term. Trustee Opposition, Ex. H.  Debtor James' paystub shows a year-to-date income for 2019 of $183,298. Id., Ex. I.  No evidence of income been provided for 2020.

Debtors now move for an order granting an immediate discharge of all dischargeable debts under newly added Section 1328(i) of the Bankruptcy Code (a "COVID-19 Discharge").

Section 1328 Discharge

Section 1328 was recently amended by the Consolidated Appropriations Act, 116 P.L. 260; 2020; 116 Enacted H.R. 133; 134 Stat. 1182, Enacted December 27, 2020 as part of a second sweeping coronavirus emergency response legislation. It reads in its entirety as follows:

> (1) IN GENERAL.—Section 1328 of title 11, United States Code, is amended by adding at the end the following:
>
> (i) Subject to subsection (d), after notice and a hearing, the court may grant a discharge of debts dischargeable under subsection (a) to a debtor who has not completed payments to the trustee or a creditor holding a security interest in the principal residence of the debtor if—
>
> (1) the debtor defaults on not more than 3 monthly payments due on a residential mortgage under section 1322(b)(5) on or after March 13, 2020, to the trustee or creditor caused by a material financial hardship due, directly or indirectly, by the coronavirus disease 2019 (COVID–19) pandemic; or
>
> (2)(A) the plan provides for the curing of a default and maintenance of payments on a residential mortgage under section 1322(b)(5); and
>
> (B) the debtor has entered into a forbearance agreement or loan modification agreement with the holder or servicer (as defined in section 6(i) of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2605(i)) of the mortgage described in sub-paragraph (A).''
>
> (2) SUNSET.—Effective on the date that is 1 year after the date of enactment of this Act, section 1328 of title 11, United States Code, is amended by striking subsection (i).

11 U.S.C. § 1328(i)

Debtors argue that they have met all the statutory requirements for a COVID-19 Discharge under § 1328(i)(2) because the Amended Plan provided for the curing of defaults and maintenance of payments on residential mortgages and they have entered into a forbearance or loan modification agreement. Debtors read § 1328(i) to mean that the only other provision of § 1328 that must be considered is § 1328(d), "Subject to subsection (d), after notice and a

hearing, the court may grant a discharge of debts dischargeable under subsection (a) to a debtor….” Reply, 4:15-17.  As the provision was only enacted a few months ago, neither the parties nor the court have found any case interpreting the COVID-19 Discharge provision under §1328(i).

Trustee contends that the natural reading and purpose of § 1328(i) is to grant debtors the ability to receive a full chapter 13 discharge (as opposed to a hardship discharge under § 1328(b)), where debtors would have otherwise met the requirements for a discharge but are "slightly behind" on their mortgage payments at the end of their plan, or are behind but have entered into a forbearance or loan modification agreement.  It is Trustee's position that there is no language in § 1328(i) that indicates that Congress intended to excuse a debtor from meeting the requirements of § 1328(b) through (h). Trustee does not argue that Debtors are not eligible to modify their plan. The question is solely whether Debtors have met the requirements for a COVID-19 Discharge under § 1328(i).

As the Supreme Court has explained "The Bankruptcy Code standardizes an expansive (and sometimes unruly) area of law, and it is our obligation to interpret the Code clearly and predictably using well established principles of statutory construction." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 649 (2012), citing United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240–241 (1989).  The bankruptcy court in In re Landry summarized nicely the rules of statutory construction that apply here:

> To determine the intent of the statute or ordinance, the court first looks to the plain language and ordinary meaning of the words used. The words are read in context of the statute, considering the nature and purpose of the enactment. If the language is clear, then no further interpretation of the statute is necessary. If the language is ambiguous, then the court considers extrinsic evidence, which includes the legislative history, public policy, and the statutory scheme of which the statute is a part.  Finally, if after reviewing the plain language and extrinsic aids the meaning of the statute remains unclear, the court, proceeding cautiously, applies reason, practicality, and common sense to the statute.

In re Landry, 493 B.R. 541, 551–52 (Bankr. E.D. Cal. 2013). See also Miranda v. Anchondo, 684 F.3d 844, 849 (9th Cir.), cert. denied, 568 U.S. 876 (2012)(our analysis begins with the statute's text); Gale v. First Franklin Loan Servs., 701 F.3d 1240, 1244 (9th Cir.2012) ("the

words of a statute must be read in their context and with a view to their place in the overall statutory scheme.")

The first distinction of consequence in section (i) is the use of the word "may." The statutory scheme that governs discharge for Chapter 13 debtors demonstrates that, under certain circumstances, Congress' use of the command "shall" intended for the discretion of a bankruptcy judge to be constrained. Under § 1328(a), a bankruptcy court "shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except…" The only exception to this appears to be the four different types of debt listed to which the discharge under § 1328(a) will not apply. Under § 1328(f), a bankruptcy court "shall not" grant a discharge in a pending case if the debtor had a discharge entered in a previous case, as provided for in the two applicable subsections. Section 1328(g) similarly constrains the discretion of the Court to enter a discharge unless the debtor completes an instructional course in personal financial management. By the use of the word "shall" in these subsections, Congress evinced an intent to make clear that there is no discretion for the Court to modify the prerequisites for relief.

In contrast, the use of the word "may" in other subsections of 1328 demonstrates Congress' intent to permit the Court to exercise its discretion in determining whether a discharge is proper. Under § 1328(b), the court *may* grant a discharge to a debtor who has not completed payments under the plan if the debtor meets the requirements listed in subsections (1), (2) and (3). 11 U.S.C. § 1328(b). Section 1328(i) provides that the court "may" grant a COVID-19 Discharge if a debtor meets the requirements of § 1328(i)(1) or § 1328(i)((2). "A well-established canon of statutory interpretation succinctly captures the problem: '[i]t is a commonplace of statutory construction that the specific governs the general." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012). In RadLAX, the Supreme Court was faced with what seemed to be plan treatment and sale motion that put two sections of Title 11, §§ 1129(b)(2)(A) and 363(k), in conflict. Id. The Supreme Court explained that the well-established canon of statutory interpretation, that the specific governs the general, is particularly true where Congress enacted a comprehensive statutory scheme and deliberately targeted specific problems with specific solutions. Id. at 645.

Here, Debtors' legal theory is that § 1328(i) should be read in isolation from the rest of § 1328 and that nothing more is required of a debtor to receive a COVID-19 Discharge other than by "meeting all statutory requirements," *i.e.,* having a confirmed "cure and pay" plan and entering into a forbearance or loan modification agreement. The Supreme Court in RadLAX explained why such a reading is improper in a comprehensive statutory scheme like Title 11:

> But the [specific governs the general] canon has full application as well to statutes such as the one here, in which a general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'

RadLAX v. Amalgamated Bank, 566 U.S. 639, 645 (2012), citing D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932). Had Congress intended the Court's inquiry to end at the consideration of only the bare statutory prerequisites of § 1328(i), it would have used the constraining "shall," as it has in other subsections of § 1328, rather than the discretionary "may." Debtors reading of § 1328(i) would upend the comprehensive statutory scheme that guides discharges in Chapter 13. Congress' use of "may" demonstrates that it intended the Court to exercise its discretion in considering whether an immediate COVID-19 Discharge is appropriate.

Concluding that "may" gives the court some discretion in applying §1328(i) does not resolve how that discretion is to be exercised for a COVID-19 discharge. As a general matter, the court may only grant a discharge under 11 U.S.C. § 1328(b) to a debtor who has not completed payments under a plan if the debtor's failure to complete the payments is due to (1) circumstances for which the debtor is not accountable, (2) the unsecured creditors have received as much as they would have in a chapter 7, and (3) the plan cannot be modified. The granting of a hardship discharge is in the court's discretion. In re Bandilli, 231 B.R. 836, 838 (B.A.P. 1st Cir. 1999); In re Hoover, 2015 WL 1407241, *3 (Bankr. N.D. Cal., March 24, 2015.) The debtor bears the burden of proof and must satisfy all three elements of § 1328(b). In re Spencer, 301 B.R. 730, 733 (B.A.P. 8th Cir. 2003). While the circumstances need not be catastrophic, § 1328(b)(1) is generally interpreted as requiring a showing of involuntary adverse circumstances. 8 Collier on Bankruptcy (16th Ed.), ¶ 1328.03[2][a], p. 1328-26.

Congress passed §1329(d) in March 2020 in order to allow debtors experiencing financial hardship due to COVID to modify their plans. *Coronavirus Aid, Relief, and Economic Security Act, 2020*, 116 P.L. 136, 2020 Enacted H.R. 748, 116 Enacted H.R. 748, 134 Stat. 281 (March 27, 2020) (the "CARES Act"). At the same time, Congress enacted sweeping provisions providing for forbearance on federally insured personal mortgage loans. Id. at § 1113. This combination was intended to keep debtors in their homes and prevent massive foreclosures during a health crisis where the public had been instructed to stay at home to reduce the spread of the disease. *Foreclosure and Eviction Moratoriums Under the CARES Act*, National Law Review, Volume X, Number 111, 2020 WLNR 11234385 (April 20, 2020).

The COVID-19 emergency relief provision provides for a modification of a plan under §1329(d) but the modification must still conform to the requirements of §§ 1322(a), 1322(b), 1323(c), and 1325(a) of the Bankruptcy Code. In re Winnegrad, 2021 WL 219519 (Bankr. D.N.J. Jan. 21, 2021). This modification provision, however, did not adequately address the situation where a debtor had complied with all requirements of the plan and was ready for a discharge but could not keep up with mortgage payments due to COVID-19 related financial setbacks. The provision directly addresses the line of cases holding that mortgage payments were "payments under the plan" so that a discharge could not be obtained under §1328(a) without curing all mortgage defaults. See, *e.g.*, In re Henrietta Campbell, 2021 WL 465423 (Bankr. S.C., Feb. 9, 2021). Section 1328(i) allows debtors who have suffered COVID-19 related financial distress to still obtain a discharge even though they have obtained a forbearance agreement or loan modification for their residential mortgage. This sequence of the COVID-19 bankruptcy relief provisions indicates that 1328(i) was more likely drafted to address the existing issue of mortgage forbearances during the pandemic rather than to provide an immediate COVID-19 Discharge without consideration of the rest of § 1328.

Debtors argue that applying other provisions of § 1328 here would impose additional requirements on this relief that are not provided for in the statute. They rely on the statutory language and cases permitting modification of plans under § 1328(d), not a COVID-19 discharge under 1328(i). See, In re Fowler, 2020 WL 6701359 at *2 (Bankr. M.D. Ala., Nov. 13, 2020)(declining to "splice words into the Bankruptcy Code that require debtors to clear a third hurdle in order to qualify for modification under §1329(d)") and In re Gilbert, 2020 WL 5939097

at *3 (Bankr E.D. La., Oct. 6, 2020)(debtor needs to meet the two requirements of §1329(d) but does not have to show a change in circumstances prior to enactment of CARES Act.). It does not make sense that Congress would pass a limited and tailored plan modification provision for COVID-19 related problems, incorporating standard Chapter 13 modification provisions, only to provide a much easier and streamlined immediate discharge provision ignoring decades of well-established Chapter 13 principles only nine months later with no explanation or comment.

As Trustee highlighted in her opposition, it could not have been the intent of Congress to eviscerate the other requirements of § 1328, as applied to § 1328(i). If compliance with § 1328(c) is not required, then non-dischargeable debts provided for in § 1322(b)(5) and § 523(a) would be discharged in a COVID-19 Discharge. If compliance with § 1328(f) is not required for a COVID-19 Discharge, a debtor that had a discharge entered in a previous case within the proscribed time period would be discharged. If § 1328(g) is not required for a COVID-19 Discharge, a debtor will not be required to complete an instructional course in personal financial management to be discharged under the provisions of § 1328(i). Here, had Congress intended that the Court's inquiry under 1328(i) be limited to merely finding determining whether a debtor has met "all statutory requirements," it could have made that intent clear by instructing that the Court "shall" enter discharge.

Debtors' interpretation of § 1328(i) would also result in an immediate COVID-19 Discharge being easier to obtain than a modification under § 1329, as amended by the CARES Act. See 11 U.S.C. § 1329(d), regardless of how long payments had been made on a plan or the ability to pay. A statute should not be read to result in such unusual outcomes, absent some clear Congressional intent. Debtors' reading of § 1328(i) is "hyperliteral and contrary to common sense." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012).

The legislative history and public policy do not, however, support that Congress intended for bankruptcy courts to create unnecessary burdensome requirements to relief under § 1328(i). The Ninth Circuit has instructed courts not to add requirements to Chapter 13 plans that are not included in the Bankruptcy Code. In re Sisk, 962 F. 3d 1133 (9th Cir. 2020). In Sisk, the plans that the Ninth Circuit were considering included added provisions replacing the form plan's fixed durational language with estimated time periods for completion of the plans. Sisk, 962 F.

3d at 1139. The Bankruptcy Appellate Panel (the "BAP") had affirmed the bankruptcy court's denial of confirmation of the plan with an estimated plan term, finding that the debtors' plans violated the Code and were not proposed in good faith. Id. at 1139-1140. The BAP's analysis relied on § 1329's requirements for plan modification to conclude that it would not make sense to allow a debtor to have unfettered discretion to complete payments "early" and shorten the time for payments by confirming a plan with an estimated duration. Id. at 1147. In reversing the BAP's decision, the Ninth Circuit found that under § 1322(b)(11), the Code expressly allows debtors to "include any other appropriate provision not inconsistent with [Chapter 13]" in their plans, so debtors have "considerable discretion to tailor the terms of a plan to their individual circumstances." Id. at 1145. The Ninth Circuit stressed that nothing in the Code required that the debtors file a fixed duration plan, and that Congress clearly used language limiting timeframes in other sections of the Code, demonstrating its ability to impose such limits when appropriate. The Ninth Circuit reversed the BAP and admonished that "[b]ecause the text and structure of the Code do not mandate a fixed term requirement for all Chapter 13 plans, we should not add one without clear direction from the statute." Id. at 1148.

Based on the court's reading of 1328(i), the need to read all subsections of a statute in the context of the entire section and statutory scheme, the court reads 1328(i) as permitting consideration of the discharge provisions of §§ 1328(a) through (h) and that incomplete personal residence mortgage payments or a forbearance do not preclude a COVID-19 Discharge. This allows the Court to provide the relief Congress provided under the pandemic relief provisions but not ignore the extent of the financial hardship, the good faith of the debtor and whether a modification is the more appropriate solution.

//
//
//
//
//
//
//
//

Debtors argue that "there is nothing in 1328(i) that requires the Debtors to show a <u>current</u> financial inability to maintain plan or mortgage payments caused by COVID-19." <u>Reply</u>, 4:14-15 (emphasis in original).  Such a showing, however, would provide the Court evidence of the extent of the financial hardship and support a finding of grounds to enter discharge under § 1328(i).  The only evidence before the Court as to whether Debtors have suffered from COVID-19 financial hardship is the Stipulation to Suspend Plan Payments, ECF doc. 40.  In the Stipulation, the parties agreed that Debtors had experienced a decrease in income related to the COVID-19 pandemic that merited the temporary, three month suspension.  This, by itself, is not sufficient to demonstrate to the Court that entry of a COVID-19 Discharge is appropriate here.

Debtors' motion is denied; they may bring a motion to modify the plan.

###

Date: March 5, 2021

Maureen A. Tighe
United States Bankruptcy Judge